IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2026

**STATE OF TENNESSEE v. TODD ALLEN BURROWS, JR.**

**Appeal from the Criminal Court for Sullivan County**
**No. S73857   James F. Goodwin, Judge**

_____

**No. E2025-01346-CCA-R3-CD**
_____

Defendant, Todd Allen Burrows, Jr., appeals the Sullivan County Criminal Court's revocation of his probation, arguing that the trial court erred by ordering that he serve the balance of his sentence in confinement. Because we conclude that the trial court did not abuse its discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JILL BARTEE AYERS, J., joined.

Wesley Aaron Mink, Blountville, Tennessee, for the appellant, Todd Burrows, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Michael J. Hurst, (Qualified Law Student, Tenn. Sup. Ct. R. 7, § 10.03); Barry P. Staubus, District Attorney General; and Mike Filetti, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant's convictions and accompanying six-year probationary sentence arose from a November 24, 2020 traffic stop during which an officer with the Bluff City Police Department discovered drugs, drug paraphernalia, and a handgun and during which Defendant pretended to be his brother.

1

## Factual and Procedural Background

In April 2021, the Sullivan County Grand Jury charged Defendant with possession with intent to sell or deliver methamphetamine, a Class C felony; possession of a handgun after having been convicted of a felony, a Class E felony; possession of drug paraphernalia, a Class A misdemeanor; and criminal impersonation, a Class B misdemeanor. Defendant entered best interests pleas of guilty as charged[1] in exchange for a total effective sentence of six years to be served on supervised probation.

A probation violation report filed on May 20, 2025, alleged that Defendant violated the terms of his probation by committing the new offenses of possession of drug paraphernalia, driving on a suspended license (three counts), failing to surrender his canceled driver's license, altering his vehicle registration tag, driving an unregistered vehicle, and failing to stop at a stop sign. The report also alleged that Defendant violated his probation by failing to report his new arrests. The report noted that Defendant had been previously sanctioned by his probation officer in April and July 2023 and in October 2024 and that his probation was revoked and reinstated in January 2024. Then, in January 2025, Defendant was cited on two different occasions for driving on a suspended license as well as for the possession of drug paraphernalia and failing to surrender his license upon cancellation. Defendant did not report these citations to his probation officer. On February 4, 2025, Defendant was arrested and charged with several driving offenses, and he failed to report the arrest or the new charges to his probation officer. A probation violation warrant issued on May 23, 2025.

At the August 6, 2025 revocation hearing, Defendant did not contest the allegations in the warrant and stipulated to the facts as alleged therein. The thirty-two-year-old Defendant testified that he entered into an agreement with the State regarding his pending charges that would allow him to complete inpatient rehabilitation followed by "sober living." Defendant said that he and his girlfriend as well as his twelve-year-old son with autism had been living with Defendant's grandmother but that he "had to leave." Defendant stated that he was the sole caretaker for his son because his girlfriend "has a lot of mental issues" and his mother was "back and forth between jobs and stuff." Defendant said that his mother was also unable to "cope with" his son's special needs. Defendant testified that he had been employed as a heating and air technician before his arrest.

Defendant acknowledged that he was addicted to methamphetamine but said that he had continued to report to his probation officer despite his drug issues. He admitted, however, that "a hold" had been placed on him "for a drug charge" in Virginia and acknowledged that the hold prevented him from asking for court-ordered drug treatment in

---

[1] In *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), the United States Supreme Court held that a criminal defendant may enter a guilty plea without admitting guilt if the defendant intelligently concludes that his best interests would be served by a plea of guilty.

relation to his probation revocation. Nevertheless, Defendant asked the court to reinstate his probation so that he could address the charge in Virginia and then potentially go to a rehabilitation facility in Virginia. He said that his primary goal was getting drug treatment so that he could resume caring for his son.

During cross-examination, Defendant admitted that he had previously served a sentence of probation for a 2016 conviction of aggravated assault and that he violated that probation by garnering the charges that led to his convictions in this case. Defendant also admitted that the trial court had previously revoked his probation in this case. He attributed his difficulty obeying the law to his drug addiction and said that he had "tried to get rehab" but had "relapsed and backed out." Defendant refused to reveal the person from whom he bought methamphetamine because "they're already in [f]ederal prison."

At the conclusion of the hearing, the trial court revoked Defendant's probation based on his plea of no contest. The trial court found that Defendant had violated a previous sentence of probation as well as his current sentence of probation and that he had pending charges in both Tennessee and Virginia. The court observed that although Defendant "claims that he wants rehab," his refusal to "give up where he's getting his drugs" evinced that "he's not gotten past the criminal thinking that has led him to where he is now." The court expressed concern about Defendant's admitted drug use considering his claim that he was the sole caretaker for his son with autism, saying, "Someone who is strung out on meth has no business trying to care for, and raise any child, much less an autistic child." The court concluded that Defendant was "either unwilling, or unable to comply with release in the community" and ordered that he serve the balance of his six-year sentence in confinement.

## Analysis

In this appeal, Defendant asserts that the trial court erred by ordering that he serve the balance of his sentence in confinement. The State contends that the trial court did not abuse its discretion. We agree with the State.

"[A] trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release." *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005) (citing Tenn. Code Ann. § 40-35-311(e)). After determining "whether to revoke probation," the trial court must "determine the appropriate consequence upon revocation." *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). We review probation revocation decisions under an abuse of discretion standard with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id.* at 759. Thus, when the trial court articulates sufficient findings on the record to allow for "a meaningful review," its decision is presumed reasonable and, absent an abuse of discretion, will be upheld. *Id.* "A trial court abuses its discretion when it applies incorrect

3

legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010); *see Dagnan*; 641 S.W.3d at 758. If the trial court fails to articulate its findings on the record, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or . . . may remand the case to the trial court to make such findings." *Id.*

When, as here, the defendant acknowledges violating the terms of his probation, a sufficient basis exists to support the revocation of his probation. *See State v. Evans*, No. E2024-00392-CCA-R3-CD, 2025 WL 354637, at *1, *3 (Tenn. Crim. App. Jan. 31, 2025), *no perm. app. filed.*; *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*. Additionally, when, as here, a "probationer commits a non-technical violation, a trial court's authority to impose a consequence for that violation is broad." *State v. Rand*, 696 S.W.3d 98, 103 (Tenn. Crim. App. 2024).

The determination of the appropriate consequence for the violation examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation. *See id.* The trial court may consider the number of previous revocations, the seriousness of the violation, the defendant's criminal history, the defendant's character, and the defendant's amenability to correction. *See Dagnan*, 641 S.W.3d at 759 n. 5. "Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation." *Rand*, 696 S.W.3d at 106 (first citing Tenn. Code Ann. § 40-35-102(3)(C); and then *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022)). Further, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *3 (Tenn. Crim. App. Feb. 28, 2023) (citation omitted), *perm. app. denied* (Tenn. June 29, 2023); *see also State v. Connor*, No. M2024-00778-CCA-R3-CD, 2025 WL 1166508, at *1, *3 (Tenn. Crim. App. April. 22, 2025) (citing Tenn. Code Ann. § 40-35-311(e)(2)), *no perm. app. filed*.

The trial court placed on the record sufficient findings to allow for meaningful review, and Defendant does not contend otherwise. Consequently, we will presume that the trial court's decision was reasonable. Furthermore, Defendant does not challenge any of the trial court's findings but argues that those findings were insufficient to support a sentence of full incarceration. Contrary to this assertion, however, the record establishes that Defendant continued using drugs and committing crimes during while on probation. Defendant was sanctioned twice, and his probation revoked once, for his failure to abide by the terms of his probation. As the trial court observed, Defendant had pending charges in both Tennessee and Virginia at the time of the revocation proceeding. Under these

4

circumstances, the trial court did not abuse its discretion by ordering that Defendant serve the balance of his sentence in confinement.

## Conclusion

Based upon the foregoing, the judgment of the trial court is affirmed.


                                             s/ Matthew J. Wilson
                                MATTHEW J. WILSON, JUDGE